Dodge v. Grafton Zipline Adventures, LLC Mr. Rankin, please proceed. May it please the Court, my name is Jason Rankin, and I represent the appellants, Grafton Zipline Adventures, LLC and Michael Quinn. This is an appeal pursuant to Supreme Court Rule 308 regarding the enforceability of a release that was voluntarily signed by the plaintiff before she engaged in a ziplining activity. This Court should hold plaintiff to her word and find that the release signed by the plaintiff before undertaking the ziplining activity, which was a condition of even participating in this activity, and which fully informed her of the inherent hazards and risks associated with the recreational activity, bars her negligence claims in order for negligence claims to be dismissed with prejudice. To briefly summarize the proceedings below, Your Honors, the plaintiff sued both Grafton Zipline Adventures, LLC and Michael Quinn for personal injuries she allegedly sustained in October of 2012 while participating in a zipline tour operated by Grafton Zipline in Grafton, Illinois. Quinn was deployed by Grafton Zipline as a tour guide on the date of the accident. The plaintiff described the zipline in her complaint as an activity in which paying guests are guided over a series of suspended wire cable runs on which the guests ride from one elevated platform to another. The plaintiff also alleged that the guests are outfitted with a harness and a pulley system which attaches to the suspended cables and which in theory allows them to control their speed upon their descent. And did that harness have a braking system with it? It did. Do all zipline harnesses have braking systems? I do believe they do, Your Honor. There's a, like for this system, at least for the Grafton Zipline system, there is a braking system that is with the harness that the participant can engage. And the tour operator will tell them we need to engage, engage the brake. And if it's not engaged, we'll give them a strong warning saying it needs to be engaged. And then if that doesn't work, there's another system, it's a secondary safety system where the tour operator is at the platform, will then pull down a knot, and then the actual, the trolley system can't go past that knot. And the reason for my asking the question, we're going to get to is this a common carrier or not? Right. And we get to the question of what is the active participation by the patron? Yes. You know, riding a bus versus on a zipline. Right. And if there is a braking system and the ability to slow down on a zipline, that there would be some active participation there, right? Yes. I think that's what you're going to be arguing to me down the road. That's exactly right. One of many reasons why this activity shouldn't be considered the traditional common carrier type of activity under the case of, you know, at the turn of the 20th century, Your Honor. Well, and drawing on one's own experiences in life, I'm not sure every zipline has got a brake on it. And so your question that certifies is that all ziplines, you know, are, fall together. And so I'm raising the question, do they really all have a brake? And is your certified question too broad? Because one can certainly argue if there is a braking system, then that is more active participation. Right. Well, for this zipline, Your Honor, it did have a braking system, certainly. I think that there are various other reasons why, even without a braking system, that the zipline should not be considered a common carrier. But certainly as to this specific zipline, this incident by the plaintiff, there was a braking system that was in place. This was the eighth run. She was able to engage. Eighth run meaning there are different stages. There were eight of nine. This was the eighth of nine runs. All the other runs, she was able to perform successfully with that incident. And do you see the active participation by the patron being the ability to brake, or are there other things that we should look at? And I went through a common carrier includes a Ferris wheel, a merry-go-round, a scenic railway such as a roller coaster, trains, buses, and elevators. But an escalator is not a common carrier. So my mind was going, okay, how is a zipline alike or not alike any of these other what have been determined by Illinois courts to be common carriers or not? Right. So should I key in on the braking system or the ability to get off that zipline? Well, I think the braking system is certainly one factor to key in on. It's certainly a factor that the Illinois Supreme Court found as important in the Tolman case that we signed into court in our briefs. In that case, the court distinguished an escalator from elevators, trains, or buses. The court specifically stated there, it is our opinion that the relationship of a passenger to the conveyance is far different in the case of a train, bus, or elevator than in the case of an escalator. The role of a passenger on a train, bus, or elevator is a passive one, and ordinarily such a passenger cannot exercise any control over his own safety. However, a person on an escalator may actively participate in transportation in a manner similar to the use of the stairway and may contribute to his own safety, just as here. In this case, certainly, Ms. Dodge was hard to contribute to her own safety by having to use that safety mechanism, that braking system on this zipline. But then also, I think, to the extent that other ziplines do not have a braking system. I think another factor that distinguishes zipline activity from other activities that have traditionally been deemed common carrier activities is the inherent dangerousness of ziplining activity. That's certainly distinguished from riding a train, riding a bus, riding a merry-go-round. One of the cases that plaintiff cites in her brief is the Arm v. Riverview Park Company case. There, the appellate court treated a merry-go-round as a common carrier. It reasoned that the merry-go-round was an activity that would lead participants to believe that they would be free from danger in that case. And therefore, we're going to say that they are deemed a common carrier. No one could undertake the activity of a zipline and say that this is free from danger. In fact, it's part of the reason that participants do it, that there is some danger involved. That's why the zipline has to have a release to say that we've now created this activity. There is a danger involved. If you choose to do it, we're going to make you wear a helmet. I've got to have—you've got to be able to support us. They provide instructions on the braking mechanism. They have to do it for this one. So all those things distinguish it really from more traditional common carriers where there isn't that inherent dangerousness involved. Counselor, I didn't mean to get to this, but let me ask you what I'm thinking about. You cited the federal case applying the State of Washington law. Yes. Where the court found that a zipline is not a common carrier. And I looked at that case, and it relies upon the narrow statute in the State of Washington defining a common carrier. But referenced in the State of California, they've got a broader statute and said in someone versus Disneyland that an amusement ride such as a Disneyland, which was a common carrier. Is there anything—there's no statute cited by either of you defining a common carrier in Illinois. So we're looking at that early 20th century Supreme Court case, which has some defining words for common carrier. Right. So my question is, does that Washington case really help? Well, it helps from just the basic premise of here's another court that was faced with the issue of whether or not a zipline, in fact, is a common carrier and held that it was not. Certainly, as the court points out, what governed that decision was the definition of ziplines—of common carriers, I should say, in that particular statute. Illinois doesn't have a statute like that. No Illinois case has held that a zipline is a common carrier. No statute has held that a zipline is a common carrier in Illinois. The only statute the plaintiff relies upon is the Carnival and Amusement Act that we have here that does govern ziplines, but it governs all kinds of different amusement or recreational activities. If all activities—I mean, basically, plaintiffs are acknowledging cases held that a zipline is a common carrier. A statute has held it as a common carrier. But because cases from the early part of the 20th century, such as for merry-go-rounds, have held that those are common carriers, those types of activities would be encompassed within the broad purview of that Carnival and Amusement Rights Act. And because then ziplines are also within that act, ergo, ziplines must then be common carriers. It requires several leaps of logic, which is just not warranted under Illinois's common carrier liability law. If the plaintiff is correct, then bungee cords, which are within the definition of common carriers, or within the purview of the Carnival and Amusement Rights Act, those would be considered common carriers. Slides would be considered common carriers. Even haunted houses would be considered common carriers. So that logic doesn't—just doesn't really hold at all. Of course, Your Honors, the Illinois Supreme Court has held that exculpatory agreements barring claims for personal injuries are enforceable, reasoning that public policy strongly favors freeing the contract, as is manifested in both the United States Constitution and in the Illinois Constitution. Specifically, the Court noted that in the Harris v. Walker case. In addition, the appellate court, including this court, has held that exculpatory agreements barring negligence claims are ordinarily enforceable and do not violate public policy as a matter of law because the parties are free to allocate risk as they see fit. With these principles in mind, the courts have held that an exculpatory agreement may act as a total bar to the plaintiff's negligence claim, and it will be enforced unless it would be against the settled public policy of the state or there's something in the social relationship of the parties that militates against upholding the agreement. The plaintiff argues that the act that we already discussed, the Illinois Carnival and Amusement Rights Safety Act, somehow indicates that the legislature intended to prohibit exculpatory agreements involving those operations—those operatives. However, the fact that the General Assembly has enacted a comprehensive statute that does also—that governs amusement right operators and includes zip wires, but has not included a prohibition on exculpatory agreements, shows that, in fact, the legislature had no intent to prohibit such exculpatory agreements. In the Zerr Hall v. Deckenbauer construction case, this court held that it takes more than the legislature's regulation of an industry in order for a court to prohibit exculpatory clauses. Reporting from that opinion, since the legislature had the opportunity to prohibit or limit exculpatory clauses, but did not, we decline the opportunity as well. And, in fact, in the first financial insurance case of the Seidman Arbreece from the First District Appellate Court, the court there held that in the absence of a legislative directive to the contrary, exculpatory provisions must be deemed valid and enforceable. And in there, the court pointed out situations where the legislature has, in fact, chosen to bar and prohibit exculpatory agreements, such as for innkeepers, for professional baileys, landlords, building contractors. Thus, the legislature has demonstrated that when it wishes to prohibit certain types of exculpatory agreements, it does so. It has not done so here. In the Schleswig case that we pointed out in Arbreece, the Illinois Supreme Court, in upholding the release there, emphasized that while it's obvious that the plaintiff would not have been allowed to use there as a race tracker, had he not signed the release, the plaintiff was under no economic or other compulsion to sign the release in order to engage, and in that case, amateur auto racing. Similarly here, there was absolutely no compulsion, of course, for Plaintiff to undertake in this recreational activity that she knowingly understood to have some implicit dangers to it. And as the Supreme Court emphasized in Harris, the plaintiff will not be burdened to complain of a risk, which he has encountered voluntarily or brought upon himself with full knowledge and appreciation of the danger. Here, there's nothing about the social relationship of the parties that supports invalidating this agreement that Plaintiff knowingly made, and on which the defendant relied in permitting her to undertake and participate in this zip-lining activity. Therefore, we request that the court answer the certified question by finding that the release bars Plaintiff's negligence claims, reverse the proper order denying defendant's motion to dismiss, in order that Plaintiff's negligence claims against the defendant be dismissed with credit. Thank you, counsel. Mr. Callahan? Yes. Good morning, Your Honors. Andrew Callahan on behalf of Plaintiff April Dodd. I think the issue in this case is very simple, and I want to just briefly go through the things that I don't think are an issue. First of all, zip-lines are amusement rides, as defined by the statute and regulated by the Department of Illinois. I don't think that's really an issue in this case. And I don't think there's an issue in this case that exculpatory agreements are invalid as to common carriers. There's nothing in defendant's brief or in his oral arguments that's contested that. So really, the sole question here is whether amusement rides, including zip-lines, are common carriers. There are essentially four cases at issue here. The first one is the O'Callaghan case, which holds that a roller coaster is an amusement ride and is a common carrier. And I think the O'Callaghan case in particular addresses some of the arguments made by defendant. Specifically, the defendants in that case argued, well, it's not a common carrier because the plaintiff was aware of the inherent dangerousness of the roller coaster. And in O'Callaghan, the Supreme Court rejected that argument and said that the duty of care is proportional to the danger to the person carried. And that the question they asked is should the motive which causes the person to take passage make any difference as to the degree of responsibility of the carrier? And the court said no. The more dangerous the ride, the higher the duty of care. And it's irrelevant whether this was for pleasure or for commerce. The court addressed and rejected both of those issues. What was the date of that case, counsel? That's O'Callaghan? Oh, that's the 1909 case. And did that case involve an exculpatory clause? No. The case involved whether or not the, well, it was as to the duty of care owed to the plaintiff. And the court addressed it in terms of whether or not the railroad was a common carrier. And said yes, the railroad, excuse me, roller coaster, yes, it was a common carrier. Yes, it was owed the highest duty of care. You know, there are no cases addressing whether exculpatory agreements are specifically enforceable against amusement rides. There's none one way or the other. So all we have to go on is the existing case law stating amusement rides are common carriers. You know, after the O'Callaghan case, there's several more that upheld that amusement rides are common carriers. We have the Arndt case in which a child fell off a merry-go-round and was injured. And there the allegation of negligence was that they failed to strap the plaintiff in properly and then she fell off. You know, in that case, they argued that it's not a common carrier because the plaintiff had to hold on. So she was responsible for her own safety. And the court rejected that argument. Said no, you know, there's some basic requirements for your own safety that do not eliminate the responsibilities of a common carrier. Just like a person walking down the aisle of a train is responsible for maintaining an upright position. You know, that doesn't, you know, that doesn't allow the train to avoid the highest degree of care. The other case is the Paycheck v. Mantra case, which was a Ferris wheel. And there again, the court held that a Ferris wheel operator is held to the highest degree of care. You know, all the cases that we've addressed held that amusement rides are common carriers. It's still in the law. It's in the Illinois pattern of jury instructions under common carriers. I cited that in my brief. The IPI cites the Paycheck case, 1949, which cites O'Callaghan. There's nothing to the contrary. And, Your Honor, to address one of the questions you had as to whether all zipline carriers have brakes used by passengers, the answer to that question is no. There are a couple of different types of systems to slow patrons down on zipline rides that are not referenced in the state records, but in the industry regulations that govern the safety of ziplines. And so, you know, ziplines, in a zipline course, there's a dip as the gravity pulls the cable down. And so in some courses, people are slowed by gravity. In some courses, there's a great big spring that you basically bounce into that slows you down or something that kind of crumples. So there are a number of different ways that patrons are slowed down on ziplines. In this zipline, and in all ziplines, there has to be a failsafe brake. And that's something that is identified in the safety regulations and was admitted by the defendants in this case during deposition is that you have to have a brake because you cannot rely on any passenger to brake themselves. You have to be prepared to brake. Here, we've alleged in our complaint that the brake didn't work. I don't know how you can hold a plaintiff responsible for her own safety with a defective braking device. Moreover, we've alleged that the zipline was improperly designed such that she hit the tree. You're never supposed to hit the tree at the end of the zipline. So, counsel, let me interrupt you and say, there are a couple of things. In asking opposing counsel about braking system or not and whether or not this question has been certified may be too broad because this particular case had a harness with a braking system on it. But you're saying all ziplines have some way to get you stopped. And there's different ways that you can get stopped. And for that reason, all ziplines are common carriers. That's correct, Your Honor. And on the other hand, you were arguing, well, this is fact specific. And you need to look at the exact facts of our case. And we haven't got enough facts out there yet for you to look at. So how do you reconcile those two positions? Well, quite frankly, my position is that as a matter of law, amusement rides are common carriers, and thus the exculpatory agreement is unenforceable. Let's say we don't buy that. If you get past that, then it's a question of fact. And we've been talking about different facts about the nature of a zipline ride that aren't in evidence because there is no evidence. All we've got is the allegations in the complaint. And we've got your well-treated facts, which we'll take as true, that there's a harness and pulley system which attaches to the suspension cables, and which, in theory, allow them to control their speed by braking on descents, and that the passengers are responsible for beginning braking as well as maintaining and operating, not the passengers, but the zipline, for operating and maintaining the backup braking system. But my point is you have alleged facts. We're on a motion to dismiss. We're taking these facts as true. And aren't you stuck with those at this point in time? And then how do we get to those additional facts? Well, first of all, I think that I have alleged facts. I've also alleged facts that the braking system malfunctioned such that she was incapable of controlling her own speed, thus placing her solely within the control of the defendant. The whole basis of my complaint is that she wasn't able to brake. So, again, I don't think you can hold the defendant to a lower standard of care because the braking system in this flight didn't work properly. Could the braking system have not worked because of operator error? It could have, but that's a fact question. And, again, I think we're getting into fact questions. You know, the defendants want to say this is more like an escalator than an elevator. I disagree. I think it's more like an elevator in that these passengers are getting sent down these wires with a harness provided by the defendant, inspected by the defendant, attached to the person by the defendant, attached to the wire by the defendant. They have to follow the defendant's instructions as to when to go, when to stop, when to start braking, how to end at the platform where they end. And these platforms aren't very big. You know, the platform where the plaintiff was injured is strapped up in a tree about 20 feet in the air, and there's only five or six feet between the end of the platform and the tree. These are not things that your average person is going to know off the top of their head. You know, the passengers are placing their safety in the competency of the zip line operator. You know, your average person on the street doesn't know how to operate a zip line brake, and they don't know how they're supposed to be positioned to receive the end of the zip line. These are things that they are relying solely on the competency of the zip line operator, just like in a train or an elevator. You know, you don't see the inner workings of how one of these harnesses operates. You're relying on the due care of the defendant. Counselor, again, if we don't accept your argument that all amusement rides are common carriers, do you agree that our analysis then is looking at is a zip line more like an escalator or an elevator? I agree. And very fact-specific? I agree. I think it's very fact-specific. I think it's more appropriate for a motion for summary judgment after we have evidence before the court. Most people haven't taken a zip line. This is not something that everyone is aware of. And I think that I would have gotten good testimony from the defendants and the representatives about the fact that they are responsible for the safety of plaintiffs and that they can't rely on plaintiffs to protect themselves. And I've cited some of that in the brief, even though this is not a motion to dismiss, because there is real issues of fact here as to what the duties are and what the responsibility of my client was for her own safety. And essentially, the defendants have admitted that she shouldn't have hit that tree. And the fact that she did hit the tree means they screwed something up. And I've got that cited. Obviously, they don't use that language. But they admit something went wrong. And it was something that went wrong under their control. So for that reason, if you determine that amusement rides are not, as a matter of law, common carriers, I think this is something that has to be addressed on either a motion for summary judgment or after a trial because there are serious questions of fact here. And quite frankly, that's not going to change anything in the litigation of the case going forward. We've got a willful and long account against the zip line operator that is going to proceed whether or not the exculpatory agreement is enforceable. We've also got a claim against the designer of the zip line, which is going to go forward, regardless of how this is resolved. Addressing this on a motion for summary judgment is not going to change the litigation moving forward. It's the same fact issues. It's the same discovery, quite frankly. We have a lot of discovery already. So I don't see the harm in addressing this on a factual basis rather than as an abstract question of law. You know, I think there are some important distinctions between this case and, for instance, the auto racing case, where obviously somebody driving a car on a racetrack is more responsible for their own safety than someone that gets sent down a steel cable on a harness that they don't understand, haven't inspected, and haven't operated before they start the course. Your Honors, I think that's my position. If you don't have any questions, I won't keep talking to you. Thank you for your time. Mr. Rick, let me start with a question, and maybe you're going to address this first. But back to if we don't buy the plaintiff's argument that a zip line, just because it's under the Amusement Act, that it's a common carrier, then is our analysis looking at what's a zip line more like, an elevator ride or an escalator ride? And so it gets fact specific. But I think I want you to articulate it. I read your reply brief, and you say, well, they've pledged some facts, and they've pledged that there's a braking system, and they can control, the patron can control her speed with that braking system. And because of this level of control, it falls where it falls. Right. Your Honor, I think that certainly we're carrying on their business. They've pleaded facts that we think established as a matter of law that the release is binding and enforceable. Their argument in response to our release, they don't dispute that it was signed. They don't dispute that she knowingly signed the release there. Their basic dispute is just that, well, we think that somehow zip lines should be deemed common carriers because they're governed by this Amusement Act. And we think that as a matter of law, we're not governed, or that does not, even though we're governed by that act, that does not make the release unenforceable. It doesn't mean we're a common carrier. We're not a common carrier at all. And it doesn't make the release unenforceable. So we think it's clear that under the facts pleaded, and I don't think there's an amendment that could avoid this release if something was knowingly signed. And I don't think they could say that somehow for this zip line that there wasn't a braking mechanism that the plaintiff was instructed to engage. And I think that, at a minimum, takes it out of a typical common carrier situation. So I don't think there is a way that they could plead facts in order to avoid this release. The plaintiff also, a plaintiff attorney, began his argument by saying that it wasn't in dispute that if an entity is a common carrier, then the release, you know, a release is held in doubt. I would say that we certainly would dispute that even if somehow we are deemed a common carrier, we would still say that given the history of that line of cases regarding common carriers, we basically need to be an insurer of the safety of the participant. Those should not apply to a situation here where there's no way that a zip line could be deemed an insurer of the plaintiff's safety here. She knowingly entered into this activity knowing that there was danger, dangerous, that there was inherent danger with this activity. Plaintiff's counsel also made several comments about, well, we think something malfunctioned here. Something must have gone wrong. Well, that's the whole point of the release. The release expressly says something might go wrong. There is a risk of injury. Those arguments do not in any way support the release not applying and barring the plaintiff's claim here. And we should not have to wait for summary judgment. As I indicated before, I don't think there's an amendment that the plaintiff could make that would avoid the effect of this release. The Illinois courts have repeatedly said that parties are permitted to enter into releases, to share the risk, and those will be enforced. The plaintiff will not be heard to complain of a risk which he encountered voluntarily and brought upon himself. That's exactly what we have here. We have a situation where the plaintiff chose to undertake the zip line activity knowing that if I'm going to undertake the zip line activity where I'm going to have to wear a helmet, I'm going to be suspended from a harness, going from heights. But if I'm going to undertake that, I want to, but I'm going to knowingly waive any claim for any injury against the operator. And she knowingly signed that release. So it's unfair for them when an injury does affect her, and it's an injury that occurred in an activity that she acknowledged would have the injury for her to come back and say, no, I'm not responsible for that. I'm an adult. I signed that release. That should be held enforceable against her, as I indicated at the beginning of my argument. The court should hold the plaintiff to her word and find that that release releases her negative claims and there's not an amendment the plaintiff could make to avoid that release. Thank you, counsel, for your arguments. We will take this matter under.